UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALIHUSSIAN BARNES,

   Plaintiff,          Case No. 1:16-CV-779

v.                 HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
              /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-one years of age on the date of the ALJ's decision. (PageID.57, 120, 129.) He completed high school and attended two years of college, but did not obtain a degree. (PageID.80.) Plaintiff previously was employed as a groundskeeper and as a building maintenance repairer. (PageID.98–99.) Plaintiff applied for benefits on April 12, 2013, alleging disability beginning March 1, 2009, due to rectal bleeding and bowel trouble. (PageID.120–121, 129–130, 235–247.) These applications were denied on September 30, 2013, after which Plaintiff requested a hearing before an ALJ. (PageID.151–194.) On September 11, 2014, Plaintiff appeared with his counsel before ALJ Michael S. Condon for an administrative hearing at which both Plaintiff and a

vocational expert (VE) testified. (PageID.75–102.) At the hearing, Plaintiff amended the alleged onset date to June 25, 2013, the day before his 50th birthday. (PageID.78, 257.) On October 31, 2014, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.57–74.) On April 18, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.34–40.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and proving that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1]
1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined that Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date. (PageID.62.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) diverticulosis/diverticulitis, with history of colon perforation and surgically removed abscess; (2) hypertension; and (3) chronic anal fissure. (PageID.62.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.62–63.) At step four, the ALJ determined that Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; occasional climbing of ladders, ropes, or scaffolds; and requires the option to alternate sitting and standing, with sitting for 20 minutes then standing for 20 minutes before sitting again.

(PageID.63.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.67.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: assembler (1,500 regional and 45,000 national positions), packager (2,500 regional and 170,000 national positions), and officer helper (4,500 regional and 180,000 national positions). (PageID.99–100.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.68.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 26, 2013, the amended alleged disability onset date, through October 31, 2014, the date of decision. (PageID.68–69.)

**DISCUSSION**

Plaintiff identifies four claims in his brief: First, that the ALJ erred in assigning only little weight to the opinion of his treating physician; second, the ALJ "played doctor" in crafting the RFC by rejecting the opinion of the treating physician; third, the ALJ violated SSR 96-8p by failing to provide a narrative discussion or account for his severe limitations in the RFC; and, fourth, that the ALJ erred by finding Plaintiff's subjective complaints to be less than fully credible. The Court will discuss the issues below.

**1.     The ALJ Correctly Evaluated the Treating Physician Opinion.**

On September 3, 2014, Dr. Jean Thomas completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's limitations.  Among other things, she noted that Plaintiff was diagnosed with an anal fissure, rectal pain, and constipation.  (PageID.475.) Dr. Thomas assigned him a guarded prognosis.  (PageID.475.)  When asked to identify the clinical findings and objective signs in support of her opinion, however, the doctor noted that Plaintiff had declined a rectal exam for personal reasons, and the doctor demurred to the records of the surgeons and specialists who had been treating Plaintiff. When asked to describe Plaintiff's treatment and response, the doctor noted that Plaintiff had undergone surgery and been prescribed topical and oral pain medication, but stated "I would direct to [the] above specialists for specifics."  (PageID.475.)

When asked whether Plaintiff's impairments were "reasonably consistent with the symptoms and functional limitations described in this evaluation" Dr. Thomas indicated that it was impossible to answer with certainty.  When further asked how long Plaintiff would be off task, and to what degree Plaintiff could tolerate work stress, Dr. Thomas responded that Plaintiff could be

5

expected to be off task twenty-five percent or more of the workday and was incapable of even low stress jobs. For both of these limitations, the doctor noted that the restrictions were "per patient." (PageID.477.)

Dr. Thomas went on to state that Plaintiff could only sit and stand / walk each for less than two hours total in an eight-hour workday. (PageID.477.) While Plaintiff would not need to be able to shift positions at will between sitting, standing, or walking, Dr. Thomas noted that this was only because Plaintiff was comfortable only when he was lying down. Plaintiff also would not need to take unscheduled breaks during an eight-hour workday, but this was because he could not work an eight-hour workday. (PageID.477.) Dr. Thomas further noted that Plaintiff was incapable of lifting and carrying even less than ten pound weights. (PageID.477.) Plaintiff could never twist, stoop, crouch, and climb ladders or stairs. (PageID.478.)

After summarizing Dr. Thomas' opinion, the ALJ gave it the following consideration:

> [D]espite Dr. Thomas being a treating physician, numerous inconsistencies with the medical evidence of record limit the weight given to this opinion. For example, the claimant admitted in his testimony that he could lift up to 20 pounds, which is in direct contrast to the opinion of Dr. Thomas. Also, there are numerous inconsistencies between the opinion and Dr. Thomas' own treatment notes. Specifically, the vast majority of Dr. Thomas' examinations of the claimant were normal, or at most, contained only limited findings (Ex 15F).
>
> Moreover, despite [] completing the opinion form, Dr. Thomas repeatedly stated that she was relying solely on the claimant's subjective statements in her completing of the form. Although there are many examples, just one is a handwritten comment by the doctor right next to a question about the percentage of the day that the claimant would be off task. Although the doctor checked the claimant would be off task 25 percent or more of the time, she immediately qualified this by writing, "Per patient". In fact, the overall lack of any substantive support for her statements is contained throughout the form comprising the opinion as many other responses were also qualified by Dr. Thomas with the use of such terms as, "Patient assertion" and "Per patient report." (Ex 14F). Dr. Thomas even replied to the question of whether the claimant's symptoms

> were "reasonably consistent" [emphasis in original document], to
> which she wrote, "Impossible to answer with certainty" (Ex 14F/3).
> All such terms greatly erode the foundation of this opinion.

(PageID.66–67.) The gist of Plaintiff's claim is that the above discussion violates the treating physician rule. The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician when the opinion is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician

7

rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ's observation that Dr. Thomas's notes generally were normal are well supported by the record. Dr. Thomas' physical exam reports repeatedly document normal results across all areas, with Plaintiff's abdomen generally being normal with no tenderness. (*See, e.g.*, PageID.482, 485, 494.) It is not surprising that these results were normal, however, as Plaintiff's complaints centered upon his rectal area. But, as the ALJ correctly noted, Plaintiff never allowed Dr. Thomas to perform a rectal examination. (PageID.480.) Plaintiff faults the ALJ for referencing this fact, but has identified no reversible error. Plaintiff suggests that he did not allow Dr. Thomas to perform the exam because she was a woman. However, Plaintiff appears to have undergone a rectal examination on May 5, 2011, with Marcy Adams, a nurse practitioner. (PageID.397–398.) Regardless of the reason for declining the exam, the fact remains that Dr. Thomas never personally examined the area of Plaintiff's body about which he complained. While it is true that Dr. Thomas was aware that Plaintiff had been referred to specialists, agency regulations note that "[g]enerally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). The ALJ correctly questioned Dr. Thomas' familiarity with Plaintiff's condition. Furthermore, the ALJ also appropriately noted that the doctor admitted that a portion of the opinion was based on Plaintiff's subjective complaints. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 838 (6th Cir. 2005) (holding that the ALJ did not err in discounting a treating physician's

opinion that was based on "the claimant's subjective statements concerning [claimant's] own limitations").

Finally, Plaintiff contends the ALJ erred in assessing the doctor's lifting and carrying limitation. He notes that the doctor said that Plaintiff suffers from incontinence when lifting, and that the ALJ mischaracterized Plaintiff's testimony from the hearing. While it is true that Plaintiff testified he able is to lift and carry only up to twenty pounds, he nonetheless testified that he was able to lift and carry at least ten pounds. (PageID.86–87.) Dr. Thomas testified that Plaintiff could not even lift this amount. Thus, the fact remains that Plaintiff admitted at the hearing that his abilities are greater than those accounted for by Dr. Thomas.

For all the above reasons, the Court finds the ALJ provided good reasons, supported by substantial evidence, for giving only little weight to Dr. Thomas' opinions.

### 2. The ALJ Did Not "Play Doctor."

Next, Plaintiff claims that because the ALJ gave little weight to Dr. Thomas' opinion, the ALJ impermissibly "played doctor" when crafting the RFC. When determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14–CV–236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996)) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). However, when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating

9

source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'").

"[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity.") It is not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support his claim of disability. 20 C.F.R §§ 404.1512(c), 416.912(c).

Indeed, the ALJ acted squarely within his authority by determining the RFC based on the objective record and Plaintiff's testimony. Moreover, even though the ALJ assigned the opinion little weight, he still had the benefit of Dr. Thomas' opinion and found impairments consistent with the doctor's diagnosis. In sum, "nothing suggests that the ALJ quilted together solely subjective determinations in fashioning the RFC." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016); *see also Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (finding substantial evidence supported the RFC when the ALJ failed to adopt the only capacity opinion in the record); *Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015), *report and recommendation adopted sub nom. Muscott v. Comm'r of Soc. Sec.*, No. 14-13890, 2016 WL 386432 (E.D. Mich. Feb. 2, 2016) (finding that "after the ALJ

set forth good reasons for rejecting [the only opinion,] the ALJ did not need to seek out another physician's opinion"). This claim of error is accordingly denied.

### 3. The ALJ's RFC Analysis Satisfies SSR 96-8p.

Plaintiff further claims that the ALJ failed to follow the narrative discussion requirement contained in SSR 96–8p by failing to note which evidence supports the RFC. (PageID.642.) According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7 (SSA July 2, 1996). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source...explain why the opinion was not adopted." *Id.*

Plaintiff contends there is no discussion by the ALJ concerning how the evidence supported the RFC. (PageID.553.) This allegation is contradicted by the record. The portion of the ALJ's opinion dealing with the RFC assessment spans five pages and includes a summary of Plaintiff's testimony, the ALJ's credibility analysis, a discussion of the medical evidence, and a summary of the opinion evidence. After discussing these records, the ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the claimant's hearing testimony that he could lift up to 20 pounds, which is even more interesting in that he informed his primary are physician that if he even lifted 10 pounds he experienced fecal incontinence (Ex 14F and Hearing Testimony). Nevertheless, the surgery from 2009 and subsequent radiological reports provide a basis for finding that the claimant is limit[ed] to the light exertional level based on the known diverticulosis/diverticulitis that only

> occasionally caused some moderate pain (Ex 4F/7). The residual
> functional capacity is also supported by a small portion of the
> claimant's testimony that he could stand for 15 to 20 minutes, which
> is accommodated in the given residual functional capacity, which
> appears somewhat reasonable despite the limited objective support
> for such a limitation contained in the record.

(PageID.67.) It appears Plaintiff claims the ALJ should have included a limitation for his fecal incontinence. (PageID.553.) Prior to the alleged onset date, on September 30, 2011, Dr. Vladimir Ferrer indicated that Plaintiff's incontinence was due to lactose intolerance as there was no etiology on Plaintiff's last colonoscopy for diarrhea. (PageID.426–427.) On January 1, 2012, it was noted that Plaintiff had not completely cut out dairy from his diet, but even then he did not complain of diarrhea. (PageID.402.) On July 19, 2012, it was noted Plaintiff's symptoms resolved when he followed a lactose free diet. (PageID.419.) On December 26, 2013, however, he complained of occasional diarrhea to Dr. Thomas. Plaintiff reported that the diarrhea started after a November 15, 2013, surgery. (PageID.488.) But, as noted above, Plaintiff declined a rectal examination from Dr. Thomas. The doctor concluded instead that they should "try the colace for a stool softener and only use miralax if you're really not going. If this continues let me know and we can consider seeing [a gastroenterologist]." (PageID.490.) Accordingly, this complaint of incontinence appears to be due to an overuse of stool softeners or lactose intolerance. While the Court does not doubt that Plaintiff suffers from periods of incontinence, this record does little to indicate that Plaintiff's limitations exceed those accounted for in the RFC. Accordingly, for all the above reasons, this claim is denied.

> **4.    The ALJ's Credibility Analysis is Not Supported by Substantial Evidence.**

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than as recognized by the ALJ. The ALJ summarized Plaintiff's testimony as follows:

> At the hearing, the claimant testified that he suffers from constant
> pain and bleeding from his rectum. Because of this, he could only sit

> for 15 to 20 minutes at a time before his condition would become
> irritating. He added that his prescribed cream numbs the pain, but it
> is constantly there. Additionally, he stated he could only stand for
> 15-20 minutes after which [h]is rectum would start to bleed, throb,
> and itch. Similarly, he could not even walk one block because the
> friction from walking irritated his condition. He also stated that his
> sphincter muscle is unable to be repaired, and that he has to use the
> bathroom five to six times a day, but he occasionally has accidents.
> The claimant endorsed having these symptoms since he first went to
> the hospital for treatment in 2009.
>
> As for his diverticulosis, he testified that he frequently felt as if he
> would throw up, and that he suffered from this pain two to three
> times each week, during which times it was hard to keep fluid down.
> However, he used no medication for the alleged abdominal pain
> (Hearing Testimony.)

(PageID.63–64.) The ALJ then proceeded to find that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible, because:

> [T]he level of chronic pain and discomfort to which the claimant
> alleged is not supported by the record. In just one example, when the
> claimant met with a specialist at the University of Michigan in July
> 2013, he admitted he was in absolutely no pain (Ex 7F).
> Furthermore, he testified that he could lift up to 20 pounds (Hearing
> Testimony).
>
> Additionally, his statements are inconsistent with the primary care
> notes documenting no such frequency of symptoms to those alleged
> in the claimant's testimony. Other than some general complaints of
> pain, the objective evidence routinely offered little support to the
> claimant's allegations, especially noting that many physical
> examinations were normal (Ex. 15F).
>
> Startlingly, the claimant testified that not only had he sought work,
> he had been offered multiple jobs. However, he went on to state that
> he was unable to perform any work. These statements are completely
> inconsistent. One problem is that the claimant could not determine
> that he would be unable to perform the jobs that were offered to him
> since he did not accept them. But even then, the mere fact he was

13

actively applying for work showed his belief that he could perform some type of work. Overall, given the claimant sought employment and was offered jobs which he then declined, showed that he believed he was able of performing work activity but was looking for a job that fit his desires. This greatly reduces his credibility.

When initially asked what he did during the day, he replied, "nothing." However, he then went on to admit he cleaned, washed dishes, cooked, and that he went grocery shopping, though he indicated this was limited because he could not stand long. Morever, he changed positions throughout the day, but he spent much of his time lying down throughout the day.

(PageID.64.) Plaintiff contends the ALJ's analysis is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship*

14

*v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ's discussion overstates Plaintiff's testimony. At the hearing, for example, the ALJ asked Plaintiff how much he thought he could lift. Plaintiff responded that he could probably lift a garbage bag or a little bag of groceries, though not as much as he used to. When asked whether that was ten pounds or less, Plaintiff responded that "Yes, about 10, 20 pounds. I don't even think 20." (PageID.86–87.) While Plaintiff clearly admitted here that he was capable of lifting more than as found by Dr. Thomas, the record does not support the ALJ's conclusion that Plaintiff could lift up to twenty pounds.

15

In support of his assertion that the objective evidence routinely offered little support to the claimant's allegations, the ALJ cited Dr. Thomas' records. However, Dr. Thomas never performed a rectal examination on Plaintiff. Other records, on the other hand, do seem to provide support for Plaintiff's complaints, contrary to the ALJ's characterization of the objective record. For example, when Plaintiff visited Dr. Richard E Burney, M.D., on July 30, 2013 (the month after his alleged onset date), Plaintiff reported continuous and severe pain deep inside of the anal canal. (PageID.448.) Though he was not in pain on that date, he admitted that he did experience occasional pain free intervals. (*Id.*) A rectal examination was conducted and revealed evidence of an anal fissure. Dr. Burney believed that Plaintiff's pain was likely due to muscle contraction or spasm, and suggested ointment or botox injections to treat the pain. (PageID.448.) Thus, it is not the case without objective support for Plaintiff's complaints.

The ALJ also overstates Plaintiff's testimony regarding his employment search. The ALJ stated that at the hearing Plaintiff admitted he sought work. Plaintiff's testimony, however, points the other way:

> Q. Okay. All right. Have you looked for work at all since 2013?
>
> A. I, I haven't. I've had job offers, but I can't work because I cannot stand, I can't, I'm always constantly using the restroom, I have to lay down, I can't, there's nothing that I can do.
>
> Q. Tell me about some of the jobs that were offered to you.
>
> A. Oh driving, I could do security, landscaping, maintenance.
>
> Q. So even jobs that perhaps that require you to sit, you still can't do that as well, correct?
>
> A. No.

(PageID.94.) Plaintiff's testimony is clear that he has not looked for work. Some jobs may have been offered to him, but there are numerous scenarios under which those jobs could have been

16

offered without Plaintiff's initiative. Given Plaintiff's literal denial that he sought work, the ALJ's statement that Plaintiff was actively seeking work is not supported by substantial evidence.

The final reason for discounting Plaintiff's credibility appears to be his daily activities. But it is unclear how the ALJ used this testimony. If the ALJ believed such activities undercut Plaintiff's allegations, he did not explain how they did. If the ALJ discounted Plaintiff's credibility because it was inconsistent–first claiming he did nothing in a typical day and then admitting to certainly activities–such a determination is unreasonable on the record. Plaintiff's answer clearly was meant to be taken in a non-literal sense, as it was immediately followed up with the activities that were recorded by the ALJ. (PageID.90.)

In sum, the Court concludes that none of the reasons offered by the ALJ for discounting Plaintiff's credibility is supported by substantial evidence. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further evaluation of Plaintiff's credibility.

### 5. Remand is Appropriate.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there is no compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **VACATED** and the matter **REMANDED** for further factual findings including, but not necessarily limited to, further evaluation of Plaintiff's credibility, pursuant to sentence four of 42 U.S.C. § 405(g).

A separate judgment shall issue.


Dated: June 21, 2017                                       /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE